**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NUMBER 15-24760-CV-MORENO**

**IN RE: APPLICATION OF**
**DEPARTMENT OF HOMELAND SECURITY,**
**IMMIGRATION AND CUSTOMS ENFORCEMENT,**

Petitioner, **Courtroom 13-3**

vs. **Miami, Florida**

**BENAOUMEUR GUERRAB,** **January 8, 2016**

Respondent.

---

**EXCERPT PROCEEDINGS ON PETITION FOR EMERGENCY COURT ORDER**
**THE COURT'S RULING**
**BEFORE THE HONORABLE FEDERICO A. MORENO**
**UNITED STATES DISTRICT JUDGE**

---

**APPEARANCES:**

**FOR THE PETITIONER:**

**JOHN C. SPACCAROTELLA, AUSA**
United States Attorney's Office
99 Northeast 4 Street
Miami, Florida 33132
305-961-9212
Fax: 305-530-7139

**ALEC IZZO, Esq.**
Deputy Chief Counsel
Office of the Chief Counsel
**MICHELLE RESSLER, ESQ.**
Immigration and Customs Enforcement
333 South Miami Avenue
Suite 200
Miami, Florida 33130
305-400-6160

**FOR THE RESPONDENT:**

**SCOTT A. SREBNICK, ESQ.**
201 South Biscayne Boulevard
Suite 1380
Miami, Florida 33131
305-285-9019
Fax: 305-377-9937

**REPORTED BY:**

**GILDA PASTOR-HERNANDEZ, RPR, FPR**
Official United States Court Reporter
Wilkie D. Ferguson Jr. US Courthouse
400 North Miami Avenue - Suite 13-3
Miami, Florida 33128 305.523.5118
gphofficialreporter@gmail.com

**TABLE OF CONTENTS**

Page

Reporter's Certificate ...................................... 8

**EXHIBITS**

| Exhibits | Marked for Identification | | Received in Evidence | |
|---|---|---|---|---|
| Description | Page | Line | Page | Line |

(The following excerpt proceedings were held at 3:18 p.m.)

* * *

THE COURT: But anyway, you know where I'm going obviously. If not, you're in trouble, but it's a tough one. It really is, because frankly, I could see another judge disagreeing with granting the petition, and saying, that's what he wants, let it be. I am a believer in liberties, but then it's a final decision and I'm not ready to do that. Okay?

So let me tell you what I'm going to do. Anything else?

MR. SPACCAROTELLA: No, Your Honor, not from the Government.

THE COURT: I stole everybody's thunder, but I've got to do the continuation of our second day of a suppression hearing.

So what I'm going to do, as you can tell, is I'm going to grant the petition. I have considered, of course, and found credible and sufficient the testimony of Dr. Caraballo through the declaration and through the cross-examination. Even if the American Medical Association has certain views, I think even with that, I think that that's a sufficient basis. Regarding the testimony through the affidavit and the cross-examination of Mr. Mikelson, Joel Mikelson, the Assistant Field Office Director, he testified very truthfully especially upon cross-examination, saying, yeah, it's somewhat speculative. I

don't know what's going to happen, and I think that is a less strong position, the security concerns, but I think even without the security concerns, I would grant the petition. The security concerns are negligible in my view, but I think are sufficiently present to tilt it in favor of granting the petition.

Therefore, I am going to order that the Immigration and Customs Enforcement's Petition for Emergency Court Order, consistent with my last order to permit involuntary blood draws, urinalysis, conduct weigh-ins and perform routine medical examinations, be expanded; and that the Government, I'll call it the Government because it's the easiest thing for me to say, be permitted the involuntary administration of nutrients to this respondent subject to the same restrictions that Judge Altonaga did in her case 15-24560-Civil.

The Government cannot begin involuntarily administering nutrients to the respondent until it becomes medically necessary to do so to prevent death or organ failure, that is, when the respondent's weight loss reaches 20 percent of his body weight which is what we've all been doing. So that way, we don't come here every week every time he decides to eat or decides to go on strike.

When that occurs, through, of course, the competent medical authority that has already been established, the Government can administer nutrients to the respondent in the way that it has been described, the nasogastric tube or through an

intravenous line. Anesthesia, if necessary, as Dr. Caraballo testified, if he's hurting, should also be given in the interest of administering the nutrients mainly and also whatever reasonable restraint, if he resists -- it's a difficult thing and I'm glad it is someone else's decision how you do that -- to continue the same monitoring, obviously, of the health of the respondent while he continues the hunger strike. The order on involuntary blood, weigh-ins, the same thing, will continue and with the same necessary restraint, if appropriate.

I've got to give a date I think to issue this order, so the date that I'm going to give is April 15th. Everybody remembers April 15. You've got to pay your taxes. It's a Friday this year, 2016.

I can ask for a status report just to keep track of what's going on. Every 15 days would be great. You can file something in writing. This is what's happening; we're feeding him, he's doing okay. But I will grant the petition for the reasons stated.

The court reporter will transcribe this order in order to speed any possible appeal. This would be the order based upon the testimony I've heard which include the affidavits which have already been filed, but I'll file them again if you want, but I'm not going to write an opinion on it.

I do this, of course, based upon the same cases that you've all cited and that Judge Altonaga cited. Some are

District Court cases, some are Second Circuit Court cases, some are Eighth Circuit cases, basically saying that forced feeding does not violate a hunger strike and prisoners' constitutional rights if there are security concerns and the concern for life, that the balancing test should be a rational basis analysis and that I rule in favor of life over any First or Fifth Amendment right to die while you're in custody.

I would honestly tell you that since there are no code or Federal regulations that I know of that have to do with medical assistance to people who are not in custody, my ruling would probably be different with an adult who is not detained for whatever reason if he didn't want to eat.

One case that's similar would be the Sanchez case from New York where the hunger striker was trying to bring about an outcome from a judge. In this case, based on the history of the prior removal attempts, that's what this is for, and we cannot have someone even in good faith try to manipulate the system.

So that's my ruling. The order is simply going to say for the reasons stated in court. The transcript will be filed, and Mr. Srebnick, if your client wishes to appeal, go ahead. You're a good appellate and trial lawyer. You can appeal and see what happens. I hope that doesn't occur, and I hope that Mr. Guerrab does what he thinks is the right thing for him, his soul and his family, and that is, eat and live for another day. Okay.

MR. SREBNICK: Will the Court formally deny my motion for stay?

THE COURT: You're asking now for a motion to stay, and I will deny it because of the irreparable harm that would be granted, that would occur. If I granted the motion to stay, then he would die, and you know, I'm never afraid of being reversed on appeal and I could understand someone else ruling differently. I really could, but it's not going to be me under these circumstances today. Okay.

MR. SREBNICK: Thank you, Your Honor.

THE COURT: Thank you. Have a good day. Sorry it took so long.

MR. SPACCAROTELLA: Thank you.

(The hearing was concluded at 3:30 p.m.)

C E R T I F I C A T E

I hereby certify that the foregoing is an accurate transcription of proceedings in the above-entitled matter.

01-14-16
DATE

GILDA PASTOR-HERNANDEZ, RPR, FPR
Official United States Court Reporter
Wilkie D. Ferguson Jr. U.S. Courthouse
400 North Miami Avenue, Suite 13-3
Miami, Florida 33128 305.523.5118
gphofficialreporter@gmail.com